UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| WMC MORTGAGE, LLC, as successor to WMC MORTGAGE CORP., <br><br> Plaintiff, <br><br> v. <br><br> MASTR ASSET BACKED SECURITIES TRUST 2007-WMC1, by U.S. BANK NATIONAL ASSOCIATION, acting solely in its capacity as the Trustee pursuant to a Pooling and Servicing Agreement, dated as of February 1, 2007, <br><br> Defendant. | 12 Civ 1372 (JRT/TNL) |

## DEFENDANT'S ANSWER, DEFENSES AND COUNTERCLAIMS

Defendant MASTR Asset Backed Securities Trust 2007-WMC1 (the "Trust"), by U.S. Bank National Association ("U.S. Bank" or the "Trustee"), solely in its capacity as the Trustee of the Trust pursuant to a Pooling and Servicing Agreement, dated as of February 1, 2007, hereby answers the complaint (the "Complaint") of plaintiff WMC Mortgage, LLC, as successor to WMC Mortgage Corp. ("WMC") and asserts defenses and counterclaims, as follows:

### RESPONSES TO ENUMERATED ALLEGATIONS

### PRELIMINARY STATEMENT

In response to the enumerated allegations of the Complaint, the Trustee:

1. Denies the allegations of Paragraph 1 of the Complaint, except admits that this case purports to be a declaratory judgment action and that WMC agreed to repurchase mortgage loans from the Trust if WMC's representations and warranties concerning those loans were breached and the breaches materially and adversely affected the value of the loans.

2. Denies the allegations of Paragraph 2 of the Complaint, except: (a) admits that the Trustee received a letter from an investment advisor for certain certificate holders in the Trust (the "Certificateholder Letter") giving notice that 259 of the Trust's loans were in breach of WMC's representations and warranties, and (b) states that the language of the Certificateholder Letter speaks for itself.

3. Denies the allegations of Paragraph 3 of the Complaint, except admits that the Trustee timely notified WMC of the breaches identified in the Certificateholder Letter.

4. Denies the allegations of Paragraph 4 of the Complaint.

5. Denies the allegations of Paragraph 5 of the Complaint.

6. Denies the allegations of Paragraph 6 of the Complaint.

## PARTIES

7. Admits the allegations of Paragraph 7 of the Complaint.

8. Denies the allegations of Paragraph 8 of the Complaint, except admits that U.S. Bank is a national banking association with its principal place of business in Minnesota.

## JURISDICTION AND VENUE

9. Avers that the allegations in Paragraph 9 of the Complaint are a legal conclusion to which no response is necessary.

10. Avers that the allegations in Paragraph 10 of the Complaint are a legal conclusion to which no response is necessary.

11. Denies the allegations of Paragraph 11 of the Complaint, except admits that, on September 2, 2011, U.S. Bank, solely in its capacity as the Trustee for MASTR Asset Backed Securities Trust 2006-HE3, commenced an action against WMC and another mortgage loan originator in this District (the "MABS 2006-HE3 Action").

12. Denies the allegations of Paragraph 12 of the Complaint, except admits that on February 16, 2012, this Court issued an order in the MABS 2006-HE3 Action and states that the language of that order speaks for itself.

13. Denies the allegations of Paragraph 13 of the Complaint, except admits that on May 4, 2012, U.S. Bank, solely in its capacity as the Trustee for MASTR Asset Backed Securities Trust 2007-WMC1, commenced an action against WMC in the United States District Court for the Southern District of New York (the "MABS 2007-WMC1 Action").

14. Denies the allegations of Paragraph 14 of the Complaint, except admits that the MABS 2007-WMC1 Action seeks specific performance of WMC's repurchase obligations and indemnification and states that the complaint in that Action speaks for itself.

15. Denies the allegations of Paragraph 15 of the Complaint, except admits that some of the loans involved in the MABS 2007-WMC1 Action were among the loans identified in the Certificateholder Letter.

16. Denies the allegations of Paragraph 16 of the Complaint.

17. Denies the allegations of Paragraph 17 of the Complaint, except admits that WMC has filed two additional declaratory judgment actions against the Trustee in this District.

18. Denies the allegations of Paragraph 18 of the Complaint.

## FACTUAL ALLEGATIONS

19. Avers that the allegations in Paragraph 19 of the Complaint are a legal conclusion to which no response is necessary.

20. Admits the allegations of Paragraph 20 of the Complaint.

**The Assignment of the Subject Loans to the Trust**

21.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 21 of the Complaint and refers to the agreement referenced therein for its true, accurate and complete terms.

22.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 22 of the Complaint and refers to the agreement referenced therein for its true, accurate and complete terms.

23.     Admits the allegations of Paragraph 23 of the Complaint, except denies that the true and correct copy of the Assignment and Recognition Agreement, dated February 27, 2007, among UBS Real Estate Securities Inc., Mortgage Asset Securitization Transactions, Inc., and WMC Mortgage Corp. is attached to the Complaint as Exhibit 3.

24.     Admits the allegations of Paragraph 24 of the Complaint.

25.     Admits the allegations of Paragraph 25 of the Complaint, except avers that the allegations regarding whether WMC is a party to the PSA are a legal conclusion to which no response is necessary.

26.     Admits the allegations of Paragraph 26 of the Complaint.

**WMC's Representations and Warranties to the Trust Concerning the Subject Loans**

27.     Denies the allegations of Paragraph 27 of the Complaint and refers to the agreement referenced therein for its true, accurate and complete terms.

28.     Denies the allegations of Paragraph 28 of the Complaint and refers to the agreement referenced therein for its true, accurate and complete terms.

29.     Denies the allegations of Paragraph 29 of the Complaint and refers to the agreement referenced therein for its true, accurate and complete terms.

30. Denies the allegations of Paragraph 30 of the Complaint and refers to the agreements referenced therein for their true, accurate and complete terms.

31. Denies the allegations of Paragraph 31 of the Complaint and refers to the agreements referenced therein for their true, accurate and complete terms.

32. Denies the allegations of Paragraph 32 of the Complaint and refers to the agreements referenced therein for their true, accurate and complete terms.

**The Trust's Sole Remedies In the Event of Breaches of**
**WMC's Representations and Warranties Concerning the Subject Loans**

33. Denies the allegations of Paragraph 33 of the Complaint and refers to the agreement referenced therein for its true, accurate and complete terms.

34. Denies the allegations of Paragraph 34 of the Complaint and refers to the agreement referenced therein for its true, accurate and complete terms.

35. Denies the allegations of Paragraph 35 of the Complaint and refers to the agreement referenced therein for its true, accurate and complete terms.

36. Denies the allegations of Paragraph 36 of the Complaint and refers to the agreement referenced therein for its true, accurate and complete terms.

**The Trust's April 25, 2012 Notice to WMC Concerning the Subject Loans**

37. Denies knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 37 of the Complaint and refers to the Trust's letter (the "Trust Letter") for its true, accurate and complete language.

38. Denies the allegations of Paragraph 38 of the Complaint and refers to the Trust Letter referenced therein for its true, accurate and complete language.

39. Denies the allegations of Paragraph 39 of the Complaint.

40. Denies the allegations of Paragraph 40 of the Complaint and refers to the letter referenced therein for its true, accurate and complete language.

41. Denies the allegations of Paragraph 41 of the Complaint and refers to the letter referenced therein for its true, accurate and complete language.

42. Avers that the allegations in Paragraph 42 of the Complaint are a legal conclusion to which no response is necessary.

## FIRST CAUSE OF ACTION

### Declaratory Judgment

43. Restates and incorporates its answers to Paragraphs 1-42 of the Complaint as if fully set forth herein.

44. Admits the allegations in Paragraph 44 of the Complaint.

45. Denies the allegations of Paragraph 45 of the Complaint.

46. Denies the allegations of Paragraph 46 of the Complaint, except admits that the Trustee sent the Trust Letter to WMC in order to provide WMC timely notice of its breaches of representations and warranties and refers to the Trust Letter for its true, accurate and complete language.

47. Avers that the allegations in Paragraph 47 of the Complaint are a statement of WMC's position in the Complaint to which no response is necessary.

48. Denies the allegations of Paragraph 48 of the Complaint.

## PRAYER FOR RELIEF

49. The Trustee states that WMC is not entitled to any of the relief it seeks in the Complaint.

## AFFIRMATIVE AND OTHER DEFENSES

### First Defense

The Complaint fails to state a claim against the Trust upon which relief may be granted.

### Second Defense

WMC's claim is barred because the Complaint is an anticipatory declaratory judgment action.

### Third Defense

WMC's claim is barred by the doctrines of frustration of purpose and unclean hands.

### Fourth Defense

The Trust reserves the right to raise any additional defenses not asserted herein of which it may become aware through discovery or other investigation.

## COUNTERCLAIMS

Defendant-Counterclaim Plaintiff Trust, by the Trustee, as for its counterclaims (the "Counterclaims") against WMC, alleges as follows:

### PRELIMINARY STATEMENT

1.      This action arises out of the failure by WMC to comply with its express contractual obligations under a series of integrated agreements to repurchase defective loans from a pool of residential mortgage loans (the "Loans") that it originated and ultimately sold for over $700 million.

2.      WMC sold the mortgage loans to UBS Real Estate Securities, Inc. ("UBS") pursuant to the Amended and Restated Master Seller's Purchase and Warranties Agreement (the "Purchase Agreement"), dated December 1, 2005 (Docket No. 1, Ex. 1).  In turn, UBS sold the Loans and assigned all of its rights under the Purchase Agreement to Mortgage Asset Securitization Transactions, Inc. ("MASTR" or the "Depositor") pursuant to the Assignment and

7

Recognition Agreement (the "Assignment Agreement"), dated June 29, 2006 (Docket No. 1, Ex. 3). MASTR then deposited the Loans into the Trust and the Loans were securitized (the "Securitization") through the issuance, by the Trust, of certificates (the "Certificates") pursuant to the Pooling and Servicing Agreement (the "PSA"), dated as of June 1, 2006. (A true and correct copy of the PSA is attached hereto as Exhibit A)

3. In connection with the sale of the Loans to UBS, WMC made approximately 80 representations and warranties ("Representations and Warranties") regarding the agreed-upon characteristics and quality of each Loan. The Representations and Warranties included, among many others, specific representations and warranties that "there are no material defaults under the terms of the Mortgage Loan" and that "[t]here is no default, breach, violation or event of acceleration existing under the Mortgage or the related Mortgage Note . . . ." (*See* Docket No. 1, Ex. 1, § 3.02(c), (n))

4. The ability of UBS and the investors in the Certificates (the "Certificateholders") to rely upon the truth and accuracy of the Representations and Warranties is a cornerstone of the Securitization. The Representation and Warranties and the associated remedies were likely to be essential to determining the price at which UBS purchased the Loans and, ultimately, the price at which the Trust purchased the Loans. With this understanding, WMC agreed to repurchase any Loans that breached any of the Representation and Warranties. (Docket No. 1, Ex. 1, § 3.03)

5. A loan-level investigation initiated by certain Certificateholders has revealed that WMC breached certain of the Representations and Warranties with respect to at least 259 Loans in the Trust and thus, WMC is obligated to repurchase at least those 259 Loans. The Certificateholders notified the Trustee, the Servicer, and WMC of these breaches via the Certificateholder Letter, dated April 5, 2012.

6.   In accordance with the PSA, upon receiving the Certificateholder Letter, the Trustee promptly notified WMC of the breaches of the Representations and Warranties and requested that WMC cure the breaches or repurchase the 259 Loans (the "Defective Loans") within the specified cure period (the "Cure Period"). The Cure Period set forth in the Purchase Agreement is 60 days. However, WMC failed to cure the identified breaches or repurchase the Defective Loans during the Cure Period and instead, prematurely commenced the instant action seeking a declaration that it does not have to comply with its repurchase obligation.

7.   The Trust has suffered and will continue to suffer damages as a result of WMC's refusal to comply with its express contractual obligations in connection with the Defective Loans. Accordingly, the Trustee, on behalf of the Trust, is entitled to specific performance of WMC's repurchase obligation, as well as indemnification, under the Purchase Agreement.

8.   The Trust brings these counterclaims as a continuation and expansion of the claims that the Trust, by the Trustee, has previously asserted against WMC in an action entitled *MASTR Asset Backed Securities Trust 2007-WMC1 v. WMC Mortgage LLC*, No. 12 Civ. 3575 (S.D.N.Y.) (VM), which action is currently being transferred from the United States District Court for the Southern District of New York to this Court pursuant to an order issued by the Southern District of New York on July 19, 2012 (the "July 19 Order"). (A true and correct copy of the July 19 Order is attached hereto as Exhibit B)

**PARTIES**

9.   Counterclaim-Plaintiff U.S. Bank is a national banking association with its principal place of business in Minnesota.

10.  Counterclaim-Defendant WMC is, upon information and belief, a limited liability company organized under the laws of the State of Delaware, with its principal place of business in Woodland Hills, California. WMC's sole owner is General Electric Capital Corporation,

which is, upon information and belief, a corporation organized under the laws of the State of Delaware with its principal place of business in Connecticut.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is diversity between Counterclaim-Plaintiff and Counterclaim-Defendant, and the amount in controversy exceeds $75,000.

12. Venue is proper and this Court has personal jurisdiction over Counterclaim-Defendant because Counterclaim-Defendant has submitted to litigation of the instant action and other related actions before this Court.

## FACTUAL ALLEGATIONS

### I.     The Securitization

13. A mortgage loan securitization is an extensively negotiated structured finance transaction whereby mortgage loans are pooled and deposited into an entity, and serve as collateral for the issuance by that entity of securities. The securities pay principal and interest from the cash flow generated by the mortgage loan pool in accordance with specific payment rules that create different slices of risk, known as tranches.

14. The most common form of residential mortgage loan securitization involves the creation of a trust, which purchases a portfolio of mortgage loans and issues certificates. The trust and trustee hold the mortgage loans for the benefit of the certificate holders, who ultimately bear the economic consequences of the mortgage loans' performance or underperformance. The value of the mortgage loans (*i.e.*, the price that the trust paid for those loans) and the certificates issued by the trust is directly contingent on the quality of the mortgage loans as represented and warranted to by the originator of the mortgage loans and the originator's strict compliance with the associated cure, repurchase and indemnification obligations.

15. The Securitization was effectuated through this process. As noted, WMC and UBS entered into the Purchase Agreement, pursuant to which WMC sold the Loans to UBS, made the Representations and Warranties regarding the Loans, and agreed to remedy breaches of the Representations and Warranties by curing such breaches in all material respects or repurchasing the Defective Loans and indemnifying the Trust from any resultant damages.

16. In the Purchase Agreement, WMC agreed that "[t]he fact that the [UBS] has conducted or has determined not to conduct any partial or complete examination of the Mortgage Files or servicing files shall not affect [UBS's] (or any of its successors') rights to demand repurchase or other relief or remedy provided for" in the Purchase Agreement. (Docket No. 1, Ex. 1, § 2.06)

17. WMC, UBS and MASTR then entered into the Assignment Agreement, in which UBS agreed to convey to MASTR all of UBS's right, title and interest in the Loans, which UBS received through the Purchase Agreement.

18. WMC acknowledged and agreed in the Assignment Agreement that "from and the date [t]hereof [*i.e.*, June 29, 2006], (i) the Trust will be the owner of the Mortgage Loans, (ii) [WMC] shall look solely to the Trust for performance of any obligations of [UBS] insofar as they relate to the enforcement of the representations, warranties and covenants with respect to the Mortgage Loans, (iii) the Trust (including the Trustee and the Servicer acting on the Trust's behalf) shall have all the rights and remedies available to [UBS], insofar as they relate to the Mortgage Loans, under the Purchase Agreement, including, without limitation, the enforcement of the document delivery requirements and remedies with respect to breaches of representations and warranties set forth in the Purchase Agreement, and shall be entitled to enforce all of the obligations of [WMC] thereunder insofar as they relate to the Mortgage Loans . . . ." (Docket No. 1, Ex. 3 at 1-2)

11

19.   WMC further acknowledged and agreed that "all references to [UBS] (insofar as they relate to the rights, title and interest and, with respect to obligations of [UBS], only insofar as they relate to the enforcement of the representations, warranties and covenants of [WMC]) . . . under the Purchase Agreement insofar as they relate to the Mortgage Loans, shall be deemed to refer to the Trust (including the Trustee and the Servicer acting on the Trust's behalf)."  (*Id*. at 2)

20.   In addition, WMC represented and warranted in the Assignment Agreement, for the benefit of the Trust, that the Representations and Warranties "set forth in Sections 3.01 and 3.02 of the Purchase Agreement . . ., are true and correct as of the date of this Agreement[, *i.e.*, June 29, 2006,] (the 'Closing Date') as if such representations and warranties were made on such Closing Date . . . ."  (*Id*., § 2)

21.   WMC explicitly acknowledged that MASTR would thereafter transfer the Loans and all rights created by the Purchase Agreement to the Trust, and that the Assignment Agreement "shall inure to the benefit of . . . the Trust (including the Trustee and the Servicer acting on the Trust's behalf)."  (*Id*., § 6)

22.   As set forth in the PSA, MASTR created the Trust, and the Trust issued the Certificates for which the Loans served as collateral.  In the PSA, MASTR agreed to "transfer, assign, set over and otherwise convey to the Trustee without recourse, for the benefit of the Certificateholders, all the rights, title and interest of [MASTR] . . . in and to the Mortgage Loans . . . [and] the rights of [MASTR] under the Assignment Agreement . . . ."  (Ex. A, § 2.01)

23.   Put simply, the Trust holds the Loans on behalf of and for the benefit of the Certificateholders and stands in the shoes of UBS with respect to the enforcement of WMC's obligations under the Purchase Agreement, including the cure or repurchase and indemnification obligations related to the Representations and Warranties.

## II. The Trustee Has The Right To Enforce WMC's Obligations Under The Agreements

### A. WMC's Representations And Warranties Regarding The Mortgage Loans

24. WMC, through its origination and underwriting activities, had direct access to the detailed information contained in each mortgage loan file and therefore possessed unique knowledge regarding the Loans. In contrast, investors in the Certificates did not have access to the underlying loan files when the Certificates were issued.

25. Accordingly, in connection with the sale, WMC guaranteed the quality of the Loans. WMC's guarantee consisted of several components: (1) WMC made specific representations and warranties regarding each of the Loans in the pool, and (2) WMC agreed to cure or repurchase any Loans that did not conform to its representations and warranties.

26. It is apparent that this guarantee provided investors in the Certificates with the comfort and assurance that the Loans were of a certain quality. Consequently, the Certificates derived their value from the veracity of the Representations and Warranties, as well as from the dependability of WMC's contractual obligations.

27. The full list of WMC's Representations and Warranties is set forth in Section 3.02 of the Purchase Agreement (*see* Docket No. 1, Ex. 1, § 3.02), and Schedule 1 of the Assignment Agreement (Docket No. 1, Ex. 3, Schedule 1). The Representations and Warranties include WMC's contractual assurances that:

- All payments due prior to the related Cut-off Date for such Mortgage Loan have been made as of the related Closing Date; *there are no material defaults under the terms of the Mortgage Loan*; the Company has not advanced funds, or induced, solicited or knowingly received any advance of funds from a party other than the owner of the Mortgaged Property subject to the Mortgage, directly or indirectly, for the payment of any amount required by the Mortgage Loan; no payment with respect to each Mortgage Loan has been 30 days or more delinquent during the preceding twelve-month period;

- *There is no default, breach, violation or event of acceleration existing under the Mortgage or the related Mortgage Note* and, to the best of [WMC's] knowledge, no event which, with the passage of time or with notice and the expiration of any grace or cure period, would constitute a default, breach, violation or event permitting acceleration; and neither [WMC] nor any prior mortgagee has waived any default, breach, violation or event permitting acceleration.

(Docket No. 1, Ex. 1, § 3.02 (c), (n) (emphasis added))

28. Through these and many other Representations and Warranties, WMC promised that the Loans met certain essential criteria that directly pertained to the quality of those Loans. It is logical to assume that, without the Representations and Warranties, the Securitization would not have occurred or would only have been transacted on materially different economic terms.

### B. WMC's Obligation To Cure Breaches Of Its Representations And Warranties Or Repurchase The Defective Loans And Indemnify The Trust

29. Reflecting the significance of the Representations and Warranties, WMC accepted the risk that if any of the Representations and Warranties were breached, WMC itself – not the Trust – would solely bear the consequences of such breaches by repurchasing any Defective Loans, if WMC could not cure such breaches, and holding the Trust harmless from any losses caused to the Trust by such breaches or the Defective Loans.

30. Specifically, the Purchase Agreement provides that, "[w]ithin 60 days of the earlier of either discovery by or notice to [WMC] of any breach of a representation or warranty which materially and adversely affects the value of a Mortgage Loan or the Mortgage Loans, [WMC] shall use its commercially reasonable efforts promptly to cure such breach in all material respects and, if such breach cannot be cured, [WMC] shall, at the Purchaser's option, repurchase such Mortgage Loan at the Repurchase Price." (Docket No. 1, Ex. 1, § 3.03)

31. WMC also agreed to "indemnify the [Trust] and [the Trust's] agents, employees and subcontractors (including the [Trust's] servicer) and "hold them harmless against any losses,

14

damages, penalties, fines, forfeitures, reasonable and necessary legal fees and related costs, judgments, and other costs and expenses resulting from any claim, demand, defense or assertion based on or grounded upon, or resulting from, a breach of the" Representations and Warranties. (*Id.*)

32.    WMC "understood and agreed that the obligations of [WMC] set forth in . . . Section 3.03 [of the Purchase Agreement] to cure, substitute or repurchase a defective Mortgage Loan and to indemnify the [Trust] as provided in this Section 3.03 constitute the sole remedies of the [Trust] respecting a breach of the" Representations and Warranties.  (*Id.*)

### III.    WMC's Representations And Warranties Contain Breaches That Materially And Adversely Affect The Value Of The Loans

33.    It is a default under each note, mortgage, deed of trust or other security document (a "Mortgage Document"), which is associated with a Loan, for the related borrower to fail to make the full monthly payment on the date explicitly provided in the Mortgage Document.

34.    The Certificateholders identified 259 Loans where the underlying borrower had either stopped making payments altogether or missed a payment and never cured the missed payment, before June 2006.  As such, WMC's Representations and Warranties, which guaranteed that each Loan was free from default, were in breach as of June 29, 2006 – the Closing Date of the Assignment Agreement.  Accordingly, these breaches trigger WMC's cure or repurchase obligation, set forth in the Purchase Agreement, with regard to those 259 Loans.

### IV.    WMC's Refusal To Comply With Its Express Contractual Obligations

35.    Upon discovering the above-described breaches, the Trustee promptly gave notice thereof to WMC on April 24, 2012 and demanded that WMC cure those breaches or repurchase the Defective Loans within the Cure Period (the "Trustee Notice").  The Trustee Notice

enumerated the Defective Loans and detailed the specific breaches associated with each Defective Loan.

36. WMC's Cure Period for those Loans expired on June 24, 2012. However, WMC has failed to cure or repurchase any of the Defective Loans and refused to even recognize the Trustee Notice as sufficient to trigger the Cure Period. Instead, WMC commenced the instant action for an anticipatory declaratory judgment that it does not have to comply with its repurchase obligation.

## FIRST CAUSE OF ACTION

### Breach of Contract/Specific Performance

37. The Trustee incorporates by reference the allegations set forth in Paragraphs 1 through 36, inclusive, of these Counterclaims as though fully set forth herein.

38. WMC has breached its obligations under the Assignment Agreement and the Purchase Agreement. The Assignment Agreement and the Purchase Agreement are valid and enforceable contracts that give rise to certain obligations on the part of WMC with respect to the Representations and Warranties it made in connection with its sale and transfer of the Loans into the Trust.

39. On April 24, 2012, the Trustee notified WMC of breaches of its Representations and Warranties that materially and adversely affected the value of the Defective Loans and notified WMC of its obligation to cure those breaches or repurchase the Defective Loans. The Trustee's notice enumerated the Defective Loans and detailed the specific breaches associated with each Defective Loan.

40. Over 60 days, the Cure Period, have passed since WMC was notified of its Representations and Warranties breaches, but WMC has failed and refused to cure the breaches or repurchase the Defective Loans.

41.     The Trustee has performed all conditions, covenants and promises required on its part to be performed in accordance with the terms and conditions of the subject contracts.

42.     The Trustee is entitled to specific performance of WMC's contractual obligation to repurchase the Defective Loans in the Trust.  Specific performance is required because the Assignment Agreement and the Purchase Agreement specifically provide for the repurchase of any Loan(s) that breach the Representations and Warranties in a manner that materially and adversely affects the value of such Loan(s).

## SECOND CAUSE OF ACTION

### Indemnification

43.     The Trustee incorporates by reference the allegations set forth in Paragraphs 1 through 42, inclusive, of these Counterclaims as though fully set forth herein.

44.     WMC has breached its obligations under the Assignment Agreement and the Purchase Agreement.  The Assignment Agreement and the Purchase Agreement are valid and enforceable contracts that give rise to certain obligations on the part of WMC with respect to the Representations and Warranties it made in connection with its sale and transfer of the Loans into the Trust.

45.     In the Purchase Agreement, WMC agreed to indemnify and hold harmless the Trust and the Trust's agents against any losses, damages, reasonable and necessary legal fees and related costs and other costs and expenses resulting from any claim, demand, defense or assertion based on or grounded upon, or resulting from, a breach of the Representations and Warranties.

46.     On April 24, 2012, the Trustee notified WMC of breaches of its Representations and Warranties that materially and adversely affected the value of the Defective Loans and demanded that WMC cure those breaches or repurchase the Defective Loans.  The Trustee's

notice enumerated the Defective Loans and detailed the specific breaches associated with each Defective Loan.

47. Over 60 days, the Cure Period, have passed since WMC was notified of its Representations and Warranties breaches, but WMC has failed and refused to cure the breaches or repurchase the Defective Loans and instead has asserted its declaratory judgment claim.

48. The Trust has suffered and will continue to suffer damages as a direct result of WMC's breaches of its Representations and Warranties, and the Trustee has incurred and will continue to incur legal fees and other costs in connection with the enforcement of WMC's repurchase obligation grounded upon the breaches of the Representations and Warranties.

49. The Trustee has performed all conditions, covenants and promises required on its part to be performed in accordance with the terms and conditions of the subject contracts.

50. The Trustee is entitled to indemnification under the Purchase Agreement for damages, legal fees and other costs resulting from WMC's breach of the Representations and Warranties in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, judgment should be entered in favor of Defendant-Counterclaim Plaintiff and against Plaintiff-Counterclaim Defendant as follows:

(a) Denying WMC's claim for a declaratory judgment;

(b) Granting the Trustee's first counterclaim for specific performance of WMC's obligation to repurchase the Defective Loans;

(c) Granting the Trustee's second counterclaim for indemnification in an amount to be determined at trial;

(d) For prejudgment interest at the maximum legal rate; and

(e) For any other and further relief as this Court may deem just and proper.

Dated: August 1, 2012

                    Respectfully submitted,

                    MASLON EDELMAN BORMAN
                      & BRAND, LLP

                    By:  s/Justin H. Perl
                        Justin H. Perl (#151397)

                    3300 Wells Fargo Center
                    90 South Seventh Street
                    Minneapolis, MN 55402-4140
                    (612) 672-8200
                    (justin.perl@maslon.com)

                    KASOWITZ, BENSON, TORRES
                      & FRIEDMAN LLP

                    Michael M. Fay (mfay@kasowitz.com)
                    Jenny Kim (jkim@kasowitz.com)
                    Uri A. Itkin (uitkin@kasowitz.com)
                    1633 Broadway
                    New York, NY 10019
                    (212) 506-1700

                    *Attorneys for Defendant-Counterclaim Plaintiff*